UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| HOWARD LEE WHITE, ) | 3:08-CV-0252-RCJ-VPC |
| Plaintiff, ) | |
| ) | |
| vs. ) | **REPORT AND RECOMMENDATION** |
| ) | **OF U.S. MAGISTRATE JUDGE** |
| DELMAR SNIDER, et al., ) | |
| ) | |
| Defendants. ) | November 23, 2009 |

This Report and Recommendation is made to the Honorable Robert C. Jones, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and LR IB 1-4. Before the court is defendants' motion for summary judgment (#54). Plaintiff opposed (#67), and defendants replied (#73). The court has thoroughly reviewed the record and the motions. For the reasons stated below, the court recommends that defendants' motion for summary judgment (#54) be granted in part and denied in part.

**I.  HISTORY & PROCEDURAL BACKGROUND**

Plaintiff Howard Lee White ("plaintiff") is currently incarcerated at Northern Nevada Correctional Center ("NNCC") in the custody of the Nevada Department of Corrections ("NDOC") (#36). Plaintiff brings his complaint pursuant to 42 U.S.C. § 1983, alleging violations of his Eighth Amendment right against cruel and unusual punishment (#36). Plaintiff names as defendants, Dr. Delmar Snider, NNCC Physician; Dr. Mar, NNCC Physician; Dr. R. Bruce Bannister, NDOC Medical Director, and Howard Skolnik, NDOC Director. *Id.* pp. 3-4. In count I, plaintiff claims that defendants' refusal to remove a cataract in his left eye constitutes deliberate indifference to his serious medical needs. *Id.* In count II, he also maintains that defendants Skolnik and Bannister have promulgated such a policy, which exhibits deliberate indifference to his serious medical needs.[1]

---

[1] Defendants contend that plaintiff's complaint only refers to one particular time period from April 17, 2007, to September 6, 2007. They presumably base this contention on the dates marked on the front of

1

Problems associated with plaintiff's vision first appeared in 2005. According to plaintiff's medical records, on April 21, 2005, defendant Bannister referred plaintiff to Dr. Koenig for an eye examination (#55, Ex. A, p. 38). On the NDOC consultation report, Dr. Bannister wrote the following: "Schedule later October 2005; diabetic; cotton spots. If eyes worse may consider laser tx"[2] (#55, Ex. A, p. 38).

On March 9, 2006, the medical records indicate that Dr. Koenig again examined plaintiff at the eye clinic (#55, Ex. A, p. 35). Dr. Koenig also reported that plaintiff had diabetic retinopathy and a mature cataract in the left eye (#54, Ex. E, p. 24). Plaintiff's vision was 20/30 in the right eye and 20/100 in the left eye (#55, Ex. A, p. 35). At that time, Dr. Koenig noted, "recommend cataract removal os."[3] *Id.* Defendant Snider's initials appear in the bottom right corner of Dr. Koenig's report along with the date marked "3/13/06." *Id.*

In September 2006, Dr. Koenig examined plaintiff for a third time and noted, "cataract seems worse," and again recommended removal of the cataract (#55, Ex. A, p. 33). Plaintiff's vision at that time was 20/25 in the right eye and 20/300 in the left. Dr. Koenig represented to plaintiff that his vision deficit could not be corrected with lenses. Plaintiff declares that Dr. Koenig told him, "I'll recommend you for eye surgery; I cannot order new glasses. [T]he cataracts are the problem" (#36, p. 27). Defendant Snider's initials again appear in the bottom right corner of Dr. Koenig's report along with the date marked "9/14/06." (#55, Ex. A, p. 33).

On October 20, 2006, plaintiff sent a "kite" to prison officials complaining of vision loss and headaches and requesting removal of the cataract. Plaintiff received a response, which noted that "surgery will not be done due to NDOC policy" (#67, p. 63).

---

plaintiff's § 1983 form complaint. However, federal courts must apply a liberal pleading standard to plaintiff's factual allegations. *Neitzke v. Williams*, 490 U.S. 319, 330 n.9 (1989). In light of this obligation, the court looks to all the factual allegations giving rise to the complaint, which necessarily includes facts from dates beyond those listed on the front of the form complaint.

[2]"Tx" is a medical abbreviation for "treatment."

[3]"O.S." is a an abbreviation from the Latin term, "oculus sinister," meaning the patient's left eye, and "O.D." is an abbreviation from the Latin term, "oculus dexter," meaning the patient's right eye. Dorland's Illustrated Medical Dictionary 1169, 1195 (28th ed. 1988).

In March 2007, Dr. Koenig examined plaintiff for a fourth time. In his consultant's report, Dr. Koenig measured plaintiff's vision at 20/40 in the right eye and 20/400 in the left and again recommended cataract removal. Once again, the bottom right corner of the medical form contains the initials "DS" with the date "3/26/07" (#55, Ex. A, p. 31).

One month later, defendant Snider met with plaintiff and told him, "You have one good eye, and I told you, they will not approve the surgery" (#67, pp. 22, 24).

On July 25, 2007, plaintiff sent a "kite" requesting that the NDOC Utilization Review Panel (UR Panel) hear his request for cataract surgery (#67, p. 68).[4] Five days later, defendant Snider met with plaintiff. The parties dispute whether defendant Snider "treated" plaintiff. Plaintiff contends that defendant Snider did not perform any eye tests, rather he simply referred plaintiff to the UR Panel. Nonetheless, defendant Snider wrote to the UR Panel, "Patient with cataract os, vision 20/40 & 20/400, optometrist recommends cataract extraction" (#55, Ex. A, p. 30).

On August 21, 2007, the UR Panel disapproved cataract surgery. Defendants did not include any reasons for the UR Panel's denial other than a form, which indicates that plaintiff's request was disapproved.[5] Although NDOC medical directives assure that decisions are based on various factors including plaintiff's daily activities, the "reason for disapproval" contained on the form reads as follows, "refered (sic) to Dr. Mar clinic 8-23-07"(#55, Ex. A., p. 30). On August 23, 2007,

---

[4] The UR Panel is a group of five physicians who review requests for outside medical services and determine the medical necessity of the request (#54, Ex. D). The panel consists of the following five persons: Marsha Johns, D.O; David Mumford, M.D.; David Mar, M.D.; Francisco Sanchez, M.D.; Bruce Bannister, D.O. *Id.* According to defendant Bannister, the UR Panel operates under the guidelines in Medical Directive 809 (MD 809). MD 809 places cataracts in a "Level 3" category of care, which is described as the following: "Medical conditions that do not significantly interfere with the inmate's ability to function in their current living situation" ((#67, p. 40).

[5] According to defendants, the UR Panel guidelines require that each case is decided on a case-by-case basis according to criteria provided within the Medical Directives. (#54, Ex. D). Medical directive 106 ("MD 106") deals with the treatment of cataracts. It reads:

> It is the policy of the Department that inmates with cataracts will be evaluated on a case by case basis, taking into consideration their ability to function within their current living environment . . . Patients with visual impairment incompatible with the ability to perform the required tasks of daily living in their current living environment may be considered for removal of a cataract.

(#54, Ex. F).

defendant Mar examined plaintiff. At that appointment, defendant Mar, for the first time, recorded that plaintiff's daily activities were not inhibited.

On September 6, 2007, Dr. Jensen, a specialist at the eye clinic, examined plaintiff and ordered stronger eyeglasses for his right eye and recommended cataract removal (#55, Ex. A, p. 29). Dr. Jensen informed plaintiff that defendants would not approve of cataract removal because of the expense. Dr. Jensen told plaintiff that "they won't approve [the surgery] because it's expensive" (#67, p. 25). Four days later, on September 10, 2007, defendant Snider saw plaintiff. He noted that plaintiff could see well with his right eye but that his left eye remained at 20/400. Plaintiff has received new eyeglasses, which have corrected plaintiff's vision in his right eye, but his left eye remains completely blind.

Plaintiff filed suit in state court in March 2008, and defendants removed the case in May 2008.

The court notes that the plaintiff is proceeding *pro se*. "In civil rights cases where the plaintiff appears *pro se*, the court must construe the pleadings liberally and must afford plaintiff the benefit of any doubt." *Karim-Panahi v. Los Angeles Police Dep't*, 839 F.2d 621, 623 (9th Cir. 1988); *see also Haines v. Kerner*, 404 U.S. 519, 520-21 (1972).

## II. DISCUSSION & ANALYSIS

**A.  Discussion**

    **1.  Summary Judgment Standard**

Summary judgment allows courts to avoid unnecessary trials where no material factual disputes exist. *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994). The court grants summary judgment if no genuine issues of material fact remain in dispute and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(C). The court must view all evidence and any inferences arising from the evidence in the light most favorable to the nonmoving party. *Bagdadi v. Nazar*, 84 F.3d 1194, 1197 (9th Cir. 1996). However, the Supreme Court has noted:

> [W]e must distinguish between evidence of disputed facts and disputed matters of professional judgment. In respect to the latter, our inferences must accord deference to the views of prison

>authorities. Unless a prisoner can point to sufficient evidence regarding such issues of judgment to allow him to prevail on the merits, he cannot prevail at the summary judgment stage.

*Beard v. Banks*, 548 U.S. 521, 530 (2006). Where reasonable minds could differ on the material facts at issue, however, summary judgment should not be granted. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986).

The moving party bears the burden of informing the court of the basis for its motion, and submitting evidence which demonstrates the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the party opposing the motion may not rest upon mere allegations or denials in the pleadings but must set forth specific facts showing that there exists a genuine issue for trial. *Anderson*, 477 U.S. at 248. Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Celotex*, 477 U.S. at 322-23.

**B.   Analysis**

In his complaint, plaintiff alleges that defendants violated his Eighth Amendment right in their provision of medical care (#36). Specifically, plaintiff alleges that defendants denial of cataract removal in light of his increasing loss of vision and painful headaches constitutes deliberate indifference to his serious medical needs. *Id.* In support of the instant motion, defendants submit plaintiff's medical records to demonstrate that plaintiff received medical care and that his complaint merely evidences a difference of opinion between plaintiff and defendants (#54).

**1.   Eighth Amendment: Deliberate Indifference to Serious Medical Need**s

The unnecessary and wanton infliction of pain constitutes cruel and unusual punishment forbidden by the Eighth Amendment. *Whitley v. Albers*, 475 U.S. 312, 319 (1986). A prisoner's claim of inadequate medical care arises under the Eighth Amendment, and the prisoner must prove two elements: an objective standard – the seriousness of the prisoner's medical need, and a subjective standard – a deliberately indifferent response to that need. *See McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1991).

### a. Objective Element: Serious Medical Need

The objective requirement of a "serious medical need" is met if the failure to treat a prisoner's condition could result in further significant injury or the "unnecessary and wanton infliction of pain." *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (citing *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)).  Serious medical needs include "the existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *Lopez v. Smith*, 203 F.3d 1122, 1131 (9th Cir. 2000) (citations omitted).

Defendants do not address whether plaintiff's condition amounts to a serious medical need; however, the court notes that plaintiff has presented one.  Plaintiff's medical records reveal that he is completely blind in his left eye.  Both doctors Koenig and Jensen found the removal of the cataract worthy of comment in numerous reports to prison officials.  Furthermore, plaintiff notes his inability to see in the prison yard and his increased headaches.  Therefore, plaintiff has shown a serious medical need.

### b. Subjective Element: Deliberate Indifference

The subjective standard of deliberate indifference requires that the plaintiff demonstrate that prison staff denied, delayed, or intentionally interfered with medical treatment or that the way prison staff provided medical care indicates deliberate indifference, and that plaintiff sustained damages as a result of such conduct. *Hutchinson v. United States*, 838 F.2d 390, 394 (9th Cir. 1988).  With respect to delay in medical treatment, the prisoner "need not show his harm was substantial; however, such would provide additional support for the inmate's claim that the defendant was deliberately indifferent to his needs." *Jett*, 439 F.3d 1096.  Here, plaintiff has sustained harm from defendants denial of medical treatment. Unlike the initial stages of plaintiff's disability when vision could be corrected with lenses, plaintiff's vision in his left eye has reached the point where it cannot be corrected but for removal of the cataract.  Defendants' denial and delay of treatment has caused plaintiff to endure continually deteriorating vision is his left eye to the point of blindness.

In the context of prison medical care, differences of opinion amongst parties often result in litigation, and defendants maintain that such is the case here. Indeed, prison medical staff do not violate the Eighth Amendment simply because their opinion concerning medical treatment conflicts with the opinion of the inmate-patient. *Franklin v. Oregon*, 662 F.2d 1337, 1344 (9th Cir. 1981). In general, a difference of opinion between medical professionals concerning the appropriate course of treatment generally does not amount to deliberate indifference to serious medical needs. *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989). However, a prisoner can establish that such a difference of opinion amounted to deliberate indifference where "the course of treatment the doctors chose was medically unacceptable under the circumstances," and such a course of treatment was chosen "in conscious disregard of an excessive risk to the prisoner's health." *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996) (citing *Williams v. Vincent*, 508 F.2d 541, 543-44 (2d Cir. 1974) (holding that inmate stated claim for deliberate indifference where prison medical staff threw away inmate's severed ear, told inmate that 'he did not need [it],' and made no effort to reattach it")).

Contrary to defendants' argument, this case is not a mere difference of opinion between doctor and inmate; it raises a difference of opinion between medical professionals, namely the optometric specialists at the eye clinic who recommended cataract removal and defendants who claim that the procedure is not necessary. In light of the difference of opinion between doctors, the court finds that triable issues of fact do exist as to (1) whether defendants' course of treatment was medically unacceptable under the circumstances, and (2) whether the course of treatment was chosen in conscious disregard of an excessive risk to plaintiff's health. The court examines each element below.

First, plaintiff's total lack of vision in his left eye, which cannot be corrected with lenses, raises a triable issue of fact as to whether the course of treatment chosen by defendants Snider, Mar, and Bannister was "medically unacceptable" under the circumstances. Under certain circumstances, the delay or denial of cataract surgery is medically acceptable treatment.[6] For example, the court

---

[6] For example, depending on the severity of vision loss, surgery may not be necessary. In an unreported decision from the Ninth Circuit, the court affirmed summary judgment for prison doctors who delayed cataract removal over the recommendations of other doctor. *See e.g. Samonte v. Bauman*, No. 06-

-7-

notes that certain medical factors may inhibit the effectiveness of cataract removal. However, defendants do not present any evidence that their refusal to operate is a medically acceptable course of treatment. They do not offer any medical authority to indicate that their actions were proper under the circumstances, nor do they refer to any facts in this particular plaintiff's case to show that their course of treatment is medically acceptable. Instead, defendants point to the NDOC regulations, which categorizes cataract surgery is not "medically necessary" (#67, p. 39). Defendants tell plaintiff that he does not meet the "criteria" for surgery but fail to note what the "criteria" are. In light of plaintiff's condition, defendants repeated refusals coupled with the lack of any medical explanation raises an issue of fact as to whether defendants course of treatment was medically acceptable. A factual issue remains as to whether defendants surrendered professional judgment and dismissed complaints based on the mere categorization of cataract removal as "not medically necessary." *Cf. Delker v. Maass*, 843 F. Supp. 1390 (D. Or. 1994) ("[T]he words 'elective surgery' are not a talisman insulating prison officials from the reach of the Eighth Amendment. Each case must be evaluated on its own merits.").

Second, defendants actions surrounding the denial of cataract removal give rise to inferences that defendants consciously disregarded an excessive risk to plaintiff's health. Defendant Snider's statement that plaintiff "had one good eye" would seem to indicate that he was aware that denial of the surgery would result in blindness. Defendant Mar notes in his August 2007 examination that plaintiff can only see with his right eye, the inference being that defendant Mar was aware that denial of cataract removal leaves plaintiff blind in the that eye. Furthermore, defendant Mar, as a member of the UR Panel, denied plaintiff's request for surgery on August 21, two days before he examined plaintiff. Only on his August 23 examination of plaintiff did defendant Mar note that plaintiff's daily activities were not inhibited. In other words, defendant Mar's alleged reasons for denying the procedure were the product of an examination after the denial itself. This gives rise to the inference

---

16697, 2008 WL 176462, at *1 (9th Cir. Jan. 18, 2008). However, in *Samonte*, the key factual difference remains that plaintiff's vision never became worse than 20/60, a loss of vision that could be corrected with lenses. *See Samonte v. Bauman*, No. 1:05-cv-00309-HG-KSC (D. Haw. July 25, 2006) (Order Adopting Findings and Recommendation of Magistrate Judge).

that defendant Mar denied the procedure for nonmedical reasons and in conscious disregard of plaintiff's loss of vision.

Therefore, the court finds that triable issues of fact exist as to whether defendants' denial of cataract surgery in this case constitutes a deliberate indifference to plaintiff's serious medical need. Plaintiff has raised issues as to whether defendants course of treatment was medically unacceptable and chosen in conscious disregard of a risk of to his health. Accordingly, summary judgment for defendants Snider and Mar is denied.

### 2. Supervisory Liability

Although plaintiff labels count II as a § 1983 claim against a policy, practice, or custom, it appears that plaintiff attempts to bring suit against defendant Skolnik and Bannister as supervisorial personnel. In essence, plaintiff is arguing that defendants Skolnik and Bannister are responsible for NDOC policies, which they knew or should have known would lead to the deprivation of plaintiff's constitutional rights.

A supervisor may be liable only if he or she is personally involved in the constitutional deprivation, or if there is a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation. *Jones v. Williams*, 297 F.3d 930, 937 (9th Cir. 2002). When the named defendant holds a supervisorial position, the causal link between the defendant and the claimed constitutional violation must be established. To maintain his claim against defendants Bannister and/or Skolnik, "the plaintiff must set forth some evidence that the defendant either: personally participated in the alleged deprivation of constitutional rights; knew of the violations and failed to act to prevent them; or promulgated or implemented a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of the constitutional violation." *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989) (internal quotations omitted).

In this case, plaintiff has presented evidence that defendant Bannister knew or should have known of the denial. Not only do plaintiff's medical records contain a note from defendant Bannister, in which defendant Bannister indicated that further treatment of plaintiff's eyes would be considered if plaintiff's eyes got worse, but defendant Bannister notes in his responses to plaintiff's interrogatories that he had received reports as to plaintiff's complaints over medical treatment (#54,

Ex. E). Given these facts, defendant Bannister knew or should have known of the violations of plaintiff's rights.

With respect to defendant Skolnik, plaintiff has not presented evidence to demonstrate that defendant Skolnik personally participated in the alleged deprivation, nor that he knew of the violation and failed to prevent it. Plaintiff seeks to attack the legitimacy of the medical directives, but the court has no evidence to demonstrate that the policy itself is so deficient to be a repudiation of constitutional rights. Rather, the evidence presented only reflects that the policy was deficient as applied to plaintiff.

Therefore, summary judgment is granted as to defendant Skolnik but denied as to defendant Bannister.

### 3. Qualified Immunity

Defendants contend that they are entitled to qualified immunity because "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

An inmate has a constitutional right not to have his medical providers treat his condition with "deliberate indifference." *McGuckin*, 974 F.2d at 1059. In this case, plaintiff raises issues that suggest the denial in medical care was based solely on the availability of resources. A reasonable doctor would not refuse care on this basis. *Jones v. Johnson*, 781 F.2d 769, 771 (9th Cir. 1986) ("Budgetary constraints . . . do not justify cruel and unusual punishment."); *see also Spain v. Procunier*, 600 F.2d 189, 200 (9th Cir. 1979). The defendants' refusal of surgery in the face of plaintiff's complete blindness in his left eye allegedly based on the budgetary constraints raises a triable issue of fact as to whether a reasonable doctor in the defendants' position would have known he was violating plaintiff's clearly established right. *McGuckin*, 974 F.2d at 1060. Because a factual issue remains as to whether defendants refused surgical treatment solely on the basis of available resources, defendants are not entitled to qualified immunity.

### III. CONCLUSION

Based on the foregoing and for good cause appearing, the court concludes that plaintiff has demonstrated triable issues of fact concerning whether defendants were deliberately

indifferent to plaintiff's serious medical needs. As such, the court recommends that defendants' motion for summary judgment (#54) be **GRANTED** in part as to any claim against defendant Skolnik. As for the remaining defendants, the court recommends that the motion for summary judgment be **DENIED** as to all claims. The parties are advised:

1. Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule IB 3-2 of the Local Rules of Practice, the parties may file specific written objections to this report and recommendation within ten days of receipt. These objections should be entitled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

2. This report and recommendation is not an appealable order and any notice of appeal pursuant to Fed. R. App. P. 4(a)(1) should not be filed until entry of the District Court's judgment.

## IV. RECOMMENDATION

**IT IS THEREFORE RECOMMENDED** that defendants' motion for summary judgment (#54) be **GRANTED** as to defendant Skolnik. However, the court recommends that defendants' motion for summary judgment be **DENIED** as to defendants Snider, Mar, and Bannister.

**DATED**: November 23, 2009.

_____
**UNITED STATES MAGISTRATE JUDGE**